UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| CATHY SWAFFORD and RICK WOEHLECKE, individually and on behalf of all others similarly situated, ) ) ) ) | |
| Plaintiffs, ) | Case No. 1:17-cv-278-TWP-DML |
| ) | |
| v. ) | |
| ) | CLASS ACTION |
| CENTRAL TRI-AXLE, INC. ) | |
| ) | |
| Defendant. ) ) ) ) | COLLECTIVE ACTION PURSUANT TO 29 U.S.C. § 216(b) |

## BRIEF IN SUPPPORT OF MOTION TO CONDITIONALLY CERTIFY A COLLECTIVE ACTION AND FACILITATE NOTICE PURSUANT TO 29 U.S.C. §216(b)

Plaintiffs, Cathy Swafford ("Swafford") and Rick Woehlecke ("Woehlecke") (together "Plaintiffs"), by counsel, hereby submit this Brief in Support of Motion to Conditionally Certify a Collective Action and Facilitate Notice Pursuant to 29 U.S.C. §216(b), and show the Court as follows:

### I. OVERVIEW

Central Tri-Axle, Inc. ("Central Tri-Axle") has failed to pay Plaintiffs and other similarly situated employees in accordance with the Fair Labor Standards Act ("FLSA"). Specifically, Plaintiffs and other current and former dump truck drivers employed by Central Tri-Axle ("Members of the Class") were unlawfully denied overtime compensation at the rate required by the FLSA because they regularly work in excess of 40 hours per week, but are denied the required overtime premium for all of the overtime hours they work. Plaintiffs and others similarly situated have been deprived of

the overtime wages to which they are entitled under the FLSA. Plaintiffs bring this collective action pursuant to Section 16(b) of the FLSA, 29 U.S.C. § 216(b). To date, nine individuals (including Plaintiffs) have filed consents to join this collective action lawsuit.

Plaintiffs and Members of the Class are similarly situated in that they were victims of a single decision, policy, practice, or plan that resulted in unpaid overtime wages in violation of the FLSA. The Declarations submitted in support of this Motion by Swafford, Woehlecke and Opt-in Plaintiff Jeremy Arney ("Arney") demonstrate the existence of a group of similarly situated employees, specifically, dump truck drivers who worked for Central Tri-Axle. [Ex. A, Swafford Decl. ¶¶ 1 – 10; Ex. B, Woehlecke Decl. ¶¶ 1 – 12; Ex. C, Arney Decl. ¶¶ 1 – 12] These Declarations establish that Defendants have a policy, practice, or plan that has the effect of depriving Plaintiffs and Members of the Class of the overtime wages prescribed by the FLSA. These Declarations also establish that this policy, practice, or plan applied to all Members of the Class.

Plaintiffs believe they will be able to establish Defendant's FLSA violations at trial, but in ruling on this Motion, the Court is not making a determination as to the merits of the case. As set forth herein, Plaintiffs readily meet the permissive standard applicable at this stage of the two-step certification process, and conditional certification and notice to potential plaintiffs is appropriate at this point.

## II. FACTUAL BACKGROUND

Central Tri-Axle is an Indiana corporation with its principal place of business located in Edinburgh, Indiana. [Complaint, ¶ 8] Central Tri-Axle is in the business of

providing stone, gravel and dirt hauling services from various gravel pits within Indiana to customers' sites. [Ex. A, Swafford Decl. ¶ 2; Ex. B, Woehlecke Decl. ¶ 2; Ex. C, Arney Decl. ¶ 2]

Central Tri-Axle employed Swafford as a dump truck driver from approximately June 2014 to April 2016. [Ex. A, Swafford Decl. ¶ 1] Central Tri-Axle employed Woehlecke as a dump truck driver from approximately May 2010 to July 2016. [Ex. B, Woehlecke Decl. ¶ 1] Arney is currently employed by Central Tri-Axle as a dump truck driver and has been since approximately April 14, 2014. [Ex. C, Arney Decl. ¶ 1] As Drivers, Swafford, Woehlecke and Arney drove Central Tri-Axle's dump trucks. [Ex. A, Swafford Decl. ¶ 3; Ex. B, Woehlecke Decl. ¶ 3; Ex. C, Arney Decl. ¶ 3] Swafford and Woehlecke generally arrived at the lot each day between 5:30 a.m. and 5:45 a.m. and were usually two of the first Drivers there. [Ex. A, Swafford Decl. ¶ 3; Ex. B, Woehlecke Decl. ¶ 3] Arney generally arrived at the lot each day between 6:00 a.m. and 7:00 a.m. [Ex. C, Arney Decl. ¶ 3]

Upon arriving at work each day, Swafford, Woehlecke and Arney would warm up their trucks and do a walk around inspection. [Ex. A, Swafford Decl. ¶ 4; Ex. B, Woehlecke Decl. ¶ 4; Ex. C, Arney Decl. ¶ 4] Swafford, Woehlecke and Arney were required to complete a pre-trip inspection of their trucks, which involved a visual inspection. [Id.] Based on their pre-trip inspection, Swafford, Woehlecke and Arney determined whether their trucks required additional air for the tires and checked lights as well as any other general maintenance or safety repairs. [Id.] If maintenance was necessary, Swafford, Woehlecke and Arney were responsible for ensuring that their trucks received whatever maintenance was required to be ready for service. [Id.] No

time records were recorded or maintained for work duties performed prior to Swafford, Woehlecke or Arney's first run. [Id.]

As Drivers, Swafford, Woehlecke and Arney were instructed their job required that they drive to a gravel pit to pick up their hauls for the day. [Ex. A, Swafford Decl. ¶ 5; Ex. B, Woehlecke Decl. ¶ 5; Ex. C, Arney Decl. ¶ 5] Most gravel pits were between fifteen to twenty minutes away but could be as far as two hours away. [Id.] Swafford and Woehlecke each averaged 500 miles per day in their trucks, while Arney averaged between 350 and 450 miles per day in his truck. [Id.]

Swafford, Woehlecke and Arney spent their workday driving a dump truck and were paid a percentage of the revenue of the haul rate for each load they delivered. [Ex. A, Swafford Decl. ¶ 6; Ex. B, Woehlecke Decl. ¶ 6; Ex. C, Arney Decl. ¶ 6] The amount of the haul rate varied depending on the size of the load and the distance traveled. [Id.] Their paystubs reflected the different haul rates they were paid, but no accurate time records were recorded or maintained for the hours Swafford, Woehlecke and Arney worked each day. [Id.]

At the end of each workday, Swafford, Woehlecke and Arney would drive their trucks back to the lot, fill up with fuel, clean out the truck, lock it up, complete paperwork, return the paperwork to the office and leave. [Ex. A, Swafford Decl. ¶ 7; Ex. B, Woehlecke Decl. ¶ 7; Ex. C, Arney Decl. ¶ 7] No time records were recorded or maintained for these work duties. [Id.]

Swafford, Woehlecke and Arney regularly worked 10 to 12 hours per day, 5 days per week plus an additional 6 hours on some Saturdays, but their paystubs did not reflect all of the hours they worked. [Ex. A, Swafford Decl. ¶ 8; Ex. B, Woehlecke

Decl. ¶ 8; Ex. C, Arney Decl. ¶ 8] Specifically, Central Tri-Axle took no measures to track all of their hours actually worked and, as a result, Swafford, Woehlecke, and Arney were not paid the required overtime rate for all hours each worked in excess of forty (40) in a single workweek. [Id.]

While employed as Drivers, Swafford, Woehlecke and Arney worked with approximately 40 other Drivers, depending on the workload of the business. [Ex. A, Swafford Decl. ¶ 9; Ex. B, Woehlecke Decl. ¶ 9; Ex. C, Arney Decl. ¶ 9] Based on their observations and discussions with other Drivers, Swafford, Woehlecke and Arney have personal knowledge that all Drivers performed similar job duties as theirs, were subject to the same directives, and were paid based on the same pay plan. [Id.] In addition, these other Drivers were subject to the same timekeeping practices, including Central Tri-Axle's failure to track the hours worked by its Drivers, and they regularly worked in excess of forty hours per week without being paid overtime compensation for all of their hours worked. [Id.]

Plaintiffs' Complaint was filed on January 27, 2017. [Docket No. 1] On approximately, Tuesday, February 28, 2017, Central Tri-Axle mailed Swafford, Woehlecke, and other Drivers a letter notifying them of a U.S. Department of Labor settlement resulting from Central Tri-Axle's violation of the FLSA. [Ex. A, Swafford Decl. ¶ 10; Ex. B, Woehlecke Decl. ¶ 10] A copy of the letter sent by Central Tri-Axle is attached to Swafford's Declaration. [Ex. A, Swafford Decl.] Woehlecke talked with multiple current Drivers for Central Tri-Axle who informed him that Central Tri-Axle, at the end of the workday on Tuesday, February 28, 2017, offered current Drivers a check

as payment for previously unpaid overtime wages in exchange for a signed release. [Ex. B, Woehlecke Decl. ¶ 11]

On Thursday, March 1, 2017, Woehlecke drove to the offices of Central Tri-Axle and asked to see the documents relating to the letter he received. [Ex. B, Woehlecke Decl. ¶ 12] In response, Central Tri-Axle's Fleet Manager, Tony Murphy, led Woehlecke into his office and showed Woehlecke a document on Department of Labor letterhead. [Id.] The document stated that by signing the letter, Woehlecke was releasing his claims against Central Tri-Axle in exchange for approximately $235.00 in unpaid overtime wages. [Id.] Murphy informed Woehlecke that Woehlecke had a choice between this lawsuit and taking the check Murphy held in his hand. [Id.] Woehlecke asked if he could take a copy of the letter from the Department of Labor or, in the alternative, take a picture of it with his phone. [Id.] Murphy refused to let Woehlecke do either, stating, "I'm not going to help you sue us." [Id.]

Similarly, when Arney turned in his paperwork at the end of his workday on Tuesday, February 28, 2017, Cheryl, Central Tri-Axle's office employee, handed Arney a check paper clipped to a document. [Ex. C, Arney Decl. ¶ 10] Cheryl explained to Arney that Central Tri-Axle had made a mistake on overtime and the check was to make up for that mistake. [Id.] Cheryl further stated to Arney that he needed to sign his name, write his address and date the form, and he could have his check. [Id.] Arney instructed Cheryl that he would not sign anything and left the office without the check. [Id.] Dave Branum, another current Driver, was also in the office at the same time as Arney and was given the same explanation as Arney. [Id.]

On Thursday, March 2, 2017, Arney asked Central Tri-Axle for a copy of the document he was required to sign in order to receive his check. [Ex. C, Arney Decl. ¶ 11] The document given to Arney is attached to Arney's Declaration. [Id.] Arney has spoken to at least five other current Drivers who accepted a check as payment of previously unpaid overtime wages in exchange for signing the document requested by Central Tri-Axle. [Id.]

### III. LEGAL BASIS FOR 216(b) NOTICE FOR POTENTIAL PLAINTIFFS

Through this Motion, Plaintiffs seek this Court's approval for Plaintiffs' proposed Notice to all Members of the Class who worked for Central Tri-Axle as Drivers within three years prior to the date the Court approves the Notice through the present. Plaintiffs' proposed Notice is attached as Exhibit D. As shown below, Plaintiffs have met the standard for Notice to be issued to the Members of the Class.

### A. **The District Court is Authorized to Issue Notice to the Potential Opt-In Plaintiffs.**

The collective action provision of the FLSA allows for one or more employees to bring an action "on behalf of himself or themselves and other employees similarly situated." 29 U.S.C. § 216(b); Cheesman v. Nexstar Broadcasting Group, Inc., 2008 WL 2225617 at *2 (S.D. Ind., May 27, 2008); Craft et al. v. Ray's, LLC, 2008 WL 4810546 at *2 (S.D. Ind., October 29, 2008). To serve the "broad remedial purpose" of the FLSA, courts are afforded the power to authorize notice to other potential class members of their rights to "opt-in" to a plaintiff's case and form a collective action. Hoffman-LaRoche, Inc. v. Sperling, 493 U.S. 165, 170 (1989). These early notices, authorized by the court, are helpful to protect against misleading communications by the parties, resolve disputes regarding the content of any notice, prevent the proliferation of

7

multiple individual lawsuits, assure that the joinder of additional parties is accomplished properly and efficiently, and to expedite resolution of the dispute. Id at 170-172.

**B. <u>The Two-Step Certification Process</u>**

In deciding whether an FLSA action may proceed as a collective action, courts in the Seventh Circuit have adopted a two-step inquiry. <u>Cheesman</u>, 2008 WL 2225617 at *2; <u>Craft</u>, 2008 WL 4810546 at *2. The first step is called the "notice stage," and involves an "analysis of the pleadings and affidavits that have been submitted to determine whether notice should be given to potential class members." <u>Carter v. Indianapolis Power & Light Co.</u>, 2003 WL 23142183 at *2 (S.D. Ind., December 23, 2003). At the notice stage, a plaintiff's "burden is merely to make a threshold showing that he is similarly situated to the employees on whose behalf he seeks to pursue his claim." <u>Cheesman</u>, 2008 WL 2225617 at *2.

> The FLSA does not define the term 'similarly situated' or instruct judges when to exercise their discretion and authorize notice to potential plaintiffs. Courts have held, however, that being similarly situated does not require identical positions of the putative class members; instead, it requires that common questions predominate among members of the class. <u>Simmons v. Broadway Home Improvement Inc., et al.</u>, 2014 WL 3734510 at *1 (S.D. Ind., July 28, 2014) (internal citations omitted).

At this stage of the proceedings, a plaintiff is not required to prove the merits of his case. Instead, the purpose of the notice stage is merely to determine whether other potential class members should be provided notice of the lawsuit and an opportunity to join. <u>Id.</u>

The second step of the two-step process usually occurs after discovery has largely been completed, and allows a court the opportunity to determine whether the class should be decertified or restricted because various putative class members are

8

not in fact similarly situated as required by the statute. Carter, 2003 WL 23142183 at *3.

C. **Plaintiffs are Entitled to Conditional Certification by Meeting the Threshold Requirements of the Notice Stage of the Two-Step Certification Process.**

In the present case, Plaintiffs allege in their Complaint that Central Tri-Axle has a policy and practice of failing to pay overtime wages to Drivers for all hours worked. Specifically, Plaintiffs allege that Central Tri-Axle does not compensate Plaintiffs and other drivers for all of their compensable pre-shift work, post-shift work and travel time within a continuous workday. (Complaint ¶¶ 21) As a result, Central Tri-Axle did not pay Plaintiffs the overtime premium required by the FLSA for all hours worked in excess of forty (40) in a workweek. (Complaint ¶ 22). Plaintiffs allege that the violations cited above were the result of common practices and policies applied to all current and former Drivers (Complaint ¶¶ 27, 28, 33, 34, 35 and 36) Accordingly, common questions predominate among Members of the Class. Simmons, 2014 2014 WL 3734510 at *1.

As a result, Defendants have violated and are violating Section 7 of the FLSA, 29 U.S.C. § 207 by unlawfully failing to pay Plaintiffs and Members of the Class their overtime wages (Complaint ¶ 50). The allegations in the Complaint have been substantiated by the sworn Declarations of Swafford, Woehlecke and Arney (pursuant to 28 U.S.C. § 1746), who have testified that they, along with other Drivers, were subject to policies and practices, described above, to deprive them of the overtime wages to which they are entitled. [See generally, Ex. A, Swafford Decl.; Ex. B, Woehlecke Decl.; Ex. C, Arney Decl.] Plaintiffs and Members of the Class share the following similarities:

a. All work as Drivers, perform similar job duties, and were subject to the same directives . [Ex. A, Swafford Decl. ¶¶ 1, 9; Ex. B, Woehlecke Decl. ¶¶ 1, 9; Ex. C, Arney Decl.¶¶ 1, 9];

b. All are subject to the same pay policies (paid a percentage of the haul rate for each load they delivered). [Ex. A, Swafford Decl. ¶¶ 6, 9; Ex. B, Woehlecke Decl. ¶¶ 6, 9; Ex. C, Arney Decl. ¶¶ 6, 9];

c. All are subject to the same timekeeping policies in that no accurate time records were recorded or maintained and Central Tri-Axle took no measures to track Drivers' actual hours worked. [Ex. A, Swafford Decl. ¶¶ 6, 7, 8, and 9; Ex. B, Woehlecke Decl. ¶¶ 6, 7, 8, and 9; Ex. C, Arney Decl. ¶¶ 6, 7, 8 and 9];

d. All perform work prior to the start of their shifts and for which no time records are kept [Ex. A, Swafford Decl. ¶¶ 4 and 9; Ex. B, Woehlecke Decl. ¶¶ 4 and 9; Ex. C, Arney Decl. ¶¶ 4 and 9];

e. All perform work at the end of each workday and for which no time records are kept [Ex. A, Swafford Decl. ¶¶ 7 and 9; Ex. B, Woehlecke Decl. ¶¶ 7 and 9; Ex. C, Arney Decl. ¶¶ 7 and 9];

f. All regularly work overtime [Ex. A, Swafford Decl. ¶¶ 8 and 9; Ex. B, Woehlecke Decl. ¶¶ 8 and 9; Ex. C, Arney Decl. ¶¶ 8 and 9];

g. All are not paid the required overtime premium for all overtime hours worked [Ex. A, Swafford Decl. ¶¶ 8 and 9; Ex. B, Woehlecke Decl. ¶¶ 8 and 9; Ex. C, Arney Decl. ¶¶ 8 and 9]; and

h. All are subject to the same violations of the FLSA's overtime provisions.

Further, as established by the declarations of Swafford, Woehlecke, and Arney and the supporting exhibits to those declarations, the U.S. Department of Labor, Wage and Hour Division, performed an investigation and caused Central Tri-Axle to contact current and former Drivers' to alert them that Central Tri-Axle owes them unpaid wages [Ex. A, Swafford Decl. ¶¶10 and 11; Ex. B, Woehlecke Decl. ¶¶ 10, 11, and 12; Ex. C, Arney Decl. ¶¶ 8 and 9]  Central Tri-Axle's communications with current and former Drivers provide further evidence that a group of similarly situated employees exist who were subject to Central Tri-Axle's common policies and practices.   Plaintiffs, therefore, have satisfied the lenient "notice" standard by making at least "a minimal showing that others in the potential class are similarly situated."  The factual nexus that binds Plaintiffs and the Members of the Class together is Central Tri-Axle's clearly demonstrated policy and practice of failing to track hours worked by its Drivers.  This policy results in a common injury to Plaintiffs and Members of the Class whereby they are deprived of the payment of overtime wages to which they are entitled under the FLSA.   Therefore, Plaintiffs should be granted conditional certification.

### IV. RELIEF SOUGHT: CONDITIONAL CERTIFICATION, LEAVE TO ISSUE NOTICE TO POTENTIAL PLAINTIFFS, AND AN ORDER TO DISCLOSE INFORMATION IDENTIFYING POTENTIAL PLAINTIFFS

To facilitate the Notice process and preserve the rights of those who have not yet opted-in to this lawsuit, Plaintiffs seek conditional certification and authorization to send Court-supervised Notice both initial and subsequent, to all potential opt-in plaintiffs. Therefore, Plaintiffs respectfully request that this Court:

1. Approve the proposed Notice of Collective Action Lawsuit attached as Exhibit D;

2. Approve the proposed Consent to Become Party Plaintiff form for those wishing to join this action, attached as Exhibit E;

3. Approve a sixty (60) day opt-in period for potential plaintiffs to submit a Consent to Become Party Plaintiff form; and

4. Require Central Tri-Axle to disclose to Plaintiffs' counsel the names, home addresses, and home telephone numbers of all potential plaintiffs in a useable electronic format within seven (7) days from the entry of the Court's order, so as to reduce delays in sending out Notice.

## V. CONCLUSION

Plaintiffs have presented detailed allegations concerning Central Tri-Axle's unlawful method of failing to pay overtime wages due to its Drivers. Because Plaintiffs have met their burden to show that similarly situated individuals exist who have not been notified about this lawsuit, this Court should enforce the collective action provisions of the FLSA and authorize Notice. The Court should grant Plaintiffs' Motion and enter an Order with the terms set forth in Plaintiffs' proposed Order.

Respectfully submitted,

/s/ Robert J. Hunt
Robert J. Hunt (#30686-49)
Philip J. Gibbons, Jr. (#19353-49)
GIBBONS LEGAL GROUP, P.C.
3091 E. 98th Street, Suite 280
Indianapolis, Indiana 46280
Telephone: (317) 706-1100
Facsimile: (317) 616-3336
E-Mail: phil@gibbonslegalgroup.com
rob@gibbonslegalgroup.com

Attorneys for Plaintiffs

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that a copy of the foregoing has been served on the 28th day of March, 2017, by way of the Court's Electronic Case Filing system upon the following counsel of record:

Peter C. Morton
pmorton@scopelitis.com

Alvin Jackson Finklea, III
jfinklea@scopelitis.com

Alaina Cathrine Hawley
ahawley@scopelitis.com

/s/ Robert J. Hunt
Robert J. Hunt