**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION**

| | |
|---|---|
| CATHY SWAFFORD and RICK WOEHLECKE, individually and on behalf of others similarly situated, )<br>)<br>)<br>)<br>Plaintiffs, )<br>)<br>v. )<br>)<br>CENTRAL TRI-AXLE INC., )<br>)<br>Defendant. ) | Case No. 1:17-cv-00278-TWP-DML |

**ORDER ON MOTION TO CONDITIONALLY CERTIFY A
COLLECTIVE ACTION AND FACILITATE NOTICE**

This matter is before the Court on a Motion to Conditionally Certify a Collective Action and Facilitate Notice Pursuant to 29 U.S.C. § 216(b) filed by Plaintiffs Cathy Swafford ("Swafford") and Rick Woehlecke ("Woehlecke") (collectively, "Plaintiffs") ([Filing No. 22](#)). Plaintiffs previously were employed by Defendant Central Tri-Axle, Inc. ("CTI") as dump truck drivers. Plaintiffs generally worked fifty to sixty-six hours per week for CTI, yet CTI failed to accurately record their hours worked and failed to pay Plaintiffs overtime premium for overtime hours worked. Because they were not paid overtime wages and suffered other wrongful deductions, Plaintiffs initiated this lawsuit against CTI under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq.*, and the Indiana Wage Payment, Wage Deductions, and Wage Claim statutes, Ind. Code §§ 22-2-5-1, *et seq.*; 22-2-6-1, *et seq.*; 22-2-9-1, *et seq.* Plaintiffs ask the Court to conditionally certify a collective action for the FLSA claim and permit notice to others who similarly have worked or are working for CTI as drivers and who have not been paid for overtime work. For the following reasons, the Court **GRANTS** Plaintiffs' Motion to Conditionally Certify a Collective Action and Facilitate Notice.

# I. BACKGROUND

CTI is an Indiana corporation with its principal place of business in Edinburgh, Indiana. CTI hauls aggregate materials from various quarries within Indiana to its customers' sites. In order to provide these hauling services, CTI employs individual drivers. These employees drive equipment, including dump trucks, and transport materials such as stone, gravel, and dirt to various locations throughout Indiana ([Filing No. 39-1 at 1](Filing No. 39-1 at 1)).

CTI employed Swafford as a dump truck driver from approximately June 2014 to April 2016. As a driver, Swafford drove CTI's dump trucks. She generally arrived at CTI's lot each day between 5:30 a.m. and 5:45 a.m., and was often one of the first drivers there. After arriving at work in the morning, Swafford would warm up her truck and do a walk around inspection. She was required to complete a pre-trip inspection of the truck, which involved a visual inspection. If Swafford determined that the truck required additional air in the tires, replaced lights, or other general maintenance or safety repairs, Swafford was responsible for ensuring that the truck received whatever maintenance was required to be ready for service. Swafford was instructed that her job required her to drive to a gravel pit to pick up her hauls for the day. Most gravel pits were between fifteen to twenty minutes away but could be as far as two hours away. No time records were kept for Swafford's work prior to her first run ([Filing No. 23-1 at 1](Filing No. 23-1 at 1)–2).

At the end of the workday, Swafford drove her truck back to CTI's lot, filled it up with fuel, cleaned out the truck, locked the truck, completed paperwork, and returned the paperwork to the office. Then she would leave work. No time records were recorded or maintained for these work duties. *Id.* at 2. Swafford generally worked ten to twelve hours each day, five days a week, and she worked an additional six hours on some Saturdays. Her paystubs did not reflect all the hours she worked in the week. CTI did not track all of the hours Swafford actually worked, and,

as a result, Swafford was not paid the required overtime rate for all hours worked in excess of forty hours in a single workweek. *Id.* at 2–3.

Swafford worked with approximately forty other drivers at CTI, and based on her observations of and discussions with other drivers, Swafford understands that the other drivers performed similar job duties, were subject to the same rules and directives, were subject to the same timekeeping practices, and were paid based on the same pay plan. *Id.* at 3.

CTI employed Woehlecke as a dump truck driver from approximately May 2010 to July 2016 ([Filing No. 23-2 at 1](#)). The facts concerning Swafford's employment experience at CTI noted above are equally applicable to Woehlecke and his work experience at CTI. *Id.* at 1–3.

Plaintiffs filed this lawsuit against CTI on January 27, 2017. In late February 2017, Plaintiffs received a letter from CTI, which explained, "We have found an error on the payroll in which we have issued you a check. You will need to come in and sign for the check. If you have questions please give the office a call." ([Filing No. 23-1 at 3](#)–4; [Filing No. 23-2 at 3](#).) This letter was sent because of a U.S. Department of Labor investigation and settlement arising out of CTI's violation of the FLSA. Woehlecke talked with multiple current drivers for CTI who told him that at the end of the workday on February 28, 2017, CTI offered them a check as payment for previously unpaid overtime wages in exchange for a signed release ([Filing No. 23-2 at 3](#)).

On March 1, 2017, Woehlecke drove to CTI's office and asked to see the documents relating to the letter he had received. CTI's fleet manager showed Woehlecke a document from the Department of Labor, which stated that by signing the document, Woehlecke was releasing his claims against CTI in exchange for approximately $235.00 in unpaid overtime wages. *Id.* at 3–4.

CTI acknowledges that the U.S. Department of Labor conducted an audit to determine its compliance with the FLSA regarding CTI's drivers. The Department of Labor looked at a

3

particular timeframe and determined that approximately sixty drivers were due overtime pay. To resolve the matter, CTI agreed to provide a fixed payment to the drivers, which included liquidated damages. CTI asserts that forty-nine drivers have "cashed checks" provided as a result of the Department of Labor investigation ([Filing No. 39-1 at 2](); [Filing No. 44-1]()).

## II.    LEGAL STANDARD

Under the FLSA, an employee is permitted to maintain a collective action for "unpaid overtime compensation . . . for and in behalf of himself . . . and other employees similarly situated." 29 U.S.C. § 216(b). The "District Court has the discretion to authorize notice to similarly situated employees so that they may opt-in to a class." *Carter v. Indianapolis Power & Light Co.*, 2003 U.S. Dist. LEXIS 23398, at \*7 (S.D. Ind. Dec. 23, 2003). "Such a collective action differs significantly from a Rule 23 class action. Potential class members in a collective action must affirmatively *opt-in* to be bound, while in a Rule 23 action they must *opt out* [to] not be bound." *Cheesman v. Nexstar Broad. Grp., Inc.*, 2008 U.S. Dist. LEXIS 42265, at \*3 (S.D. Ind. May 27, 2008) (emphasis in original). The standards governing class certification under Rule 23 are not applicable to FLSA collective actions. *Id.* at \*5.

Courts in the Seventh Circuit engage in a two-step inquiry to determine whether an FLSA action may proceed as a collective action. *Id.* The first step is called the "notice stage" and "involves an analysis of the pleadings and affidavits which have been submitted to determine whether notice should be given to potential class members." *Id.* (quoting *Carter*, 2003 U.S. Dist. LEXIS 23398, at \*8). "The second step, which usually occurs after discovery has largely been completed, allows a court the opportunity to determine whether the class should be decertified or restricted because various putative class members are not in fact similarly situated as required by the statute." *Id.*

4

During the initial "notice stage," a plaintiff does not have to prove her entire case. Rather, the plaintiff must make only a threshold showing that she is similarly situated to the employees on whose behalf she seeks to pursue claims. *Coan v. Nightingale Home Healthcare, Inc.*, 2005 U.S. Dist. LEXIS 15475, at *3 (S.D. Ind. June 29, 2005). This threshold showing is "relatively modest". *Id.* "The modest factual showing required at the first step of the proceedings may be lenient, but it is not a mere formality." *Allen v. Payday Loan Store of Ind., Inc.*, 2013 U.S. Dist. LEXIS 169971, at *4 (N.D. Ind. Dec. 3, 2013) (citation and quotation marks omitted). "[T]o meet their burden, Plaintiffs must provide evidence via an affidavit, declaration, or other support beyond allegations in order to make a minimal showing of other similarly situated employees subjected to a common policy." *Id.*

### III. <u>DISCUSSION</u>

Among other things, the FLSA prohibits employers from working their employees more than forty hours in a workweek without compensating the employee overtime wages at a rate of at least time and a half for hours worked in excess of forty hours. 29 U.S.C. §§ 207, 215(a)(2). The FLSA provides a procedural mechanism whereby employees may litigate a collective action on behalf of similarly situated employees. *See* 29 U.S.C. § 216(b). Plaintiffs ask the Court to conditionally certify a collective action for their FLSA claim because they can meet the lenient, relatively modest threshold showing that they are similarly situated to other drivers who were denied overtime wages by their employer, CTI. Plaintiffs additionally ask the Court to allow them to provide notice to potential plaintiffs who similarly have worked or are working for CTI as drivers and who have not been paid for overtime work.

Attached to Plaintiffs' Motion are declarations from both Swafford and Woehlecke. They describe their work duties and activities, the lack of timekeeping records by CTI, their consistent

5

workweek of more than forty hours, and the failure of CTI to pay them any overtime wages. In their declarations, Plaintiffs also describe that they worked with approximately forty other drivers, and based on their observations of, and conversations with, these other drivers, they understand that the other drivers at CTI were subject to the same work policies, performed the same work responsibilities, did not have their work hours accurately recorded, worked overtime hours, and did not receive overtime wages.

Plaintiffs offer additional evidence regarding another similarly situated employee, Jeremy Arney, a driver for CTI. At the time of his declaration in March 2017, Arney was a current employee of CTI as a dump truck driver and had been since approximately April 14, 2014. Arney's work experience at CTI was very similar to that of Swafford and Woehlecke. Like Swafford and Woehlecke, Arney was offered a check for overtime wages in exchange for a release of claims against CTI ([Filing No. 23-3](#)). Plaintiffs filed a "consent to become a party plaintiff" for Arney, who desires to join in a collective action ([Filing No. 14](#)). Eight other individuals—drivers for CTI—have filed a notice with the Court, indicating their desire to join in a collective action against CTI. (*See* [Filing No. 16](#); [Filing No. 17](#); [Filing No. 18](#); [Filing No. 19](#); [Filing No. 28](#); [Filing No. 32](#).)

In response to Plaintiffs' Motion, CTI asserts that conditional certification of a collective action is not appropriate because Plaintiffs' declarations are not reliable and cannot establish that similarly situated employees were subject to the same policies or practices that violated the FLSA. CTI points to its opposing declaration, wherein it is noted that Swafford drove an average of 364 miles per day and Woehlecke drove an average of 374 miles per day, but their declarations claim that they drove an average of 500 miles per day. (*Compare* [Filing No. 39-1 at 1](#)–2 *with* [Filing No. 23-1 at 2](#) and [Filing No. 23-2 at 2](#).)

6

CTI also argues that Plaintiffs' declarations lack foundation regarding the other drivers' work experiences because Plaintiffs testified that they often were the first employees to arrive at work, and at the end of the day, nobody else was there. CTI asserts that Plaintiffs would not have had an opportunity to observe other drivers to determine their work experiences. CTI further asserts that its drivers were on different work schedules and were not directed by CTI regarding when they had to refuel their trucks, when to arrive at the facility to pick up the trucks, or when to arrive at the gravel pits. CTI asserts that Plaintiffs do not understand how overtime was calculated or compensated. CTI argues that these individual differences and factors make conditional certification of a collective action inappropriate. CTI concludes that Plaintiffs' declarations are simply unfounded beliefs and speculation that cannot support certification.

CTI alternatively argues that even if certification is granted, Plaintiffs' proposed class for a collective action is overly broad because it "includes individuals who have resolved whatever FLSA claim they may have had, including overtime pay requested in this Complaint." ([Filing No. 39 at 8](#).) CTI asserts,

> In the present case, 49 employee drivers have cashed checks provided as a result of a DOL audit with the cooperation of the DOL.
>
> Because several individuals who fall within the definition of the proposed class have accepted payment from Defendant . . . and therefore waived their right to bring suit under the FLSA, the Court should reject Plaintiffs' proposed class notice.

*Id.* (citations omitted).

Plaintiffs reply to CTI's argument by noting that any supposed conflicts between their declarations and the other evidence before the Court is based on CTI's selective representation of deposition testimony and is not relevant to the question of similarly situated employees. Plaintiffs also provide evidence of the U.S. Department of Labor's investigation of CTI and its findings that CTI had violated the FLSA regarding its drivers ([Filing No. 44-1](#)). Plaintiffs assert that the U.S.

Department of Labor's report supports a finding that CTI's drivers are similarly situated and were subject to similar policies and practices that resulted in the drivers being deprived of overtime wages in violation of the FLSA. The government investigation and report determined that nearly sixty drivers were entitled to unpaid overtime wages.

Regarding CTI's claim that the proposed class is too broad, Plaintiffs argue that deciding the validity and nature of any release of claims by potential class members gets to the merits and is premature. They also assert that the validity of any release is questionable because there is a difference between waiving rights to file a lawsuit and waiving rights to join a lawsuit that is already pending. CTI's release did not inform putative class members that a collective action was already pending. Additionally, the purported release is not a full release because it covers only a limited timeframe in conjunction with the U.S. Department of Labor's investigation. Furthermore, Plaintiffs note, CTI simply states that employees cashed checks, but there is no evidence that claims were released and there is no evidence regarding who even cashed checks. Thus, they assert, the proposed class should not be narrowed.

The Court determines that conditional certification of a collective action for Plaintiffs' FLSA claim is appropriate because Plaintiffs have made a threshold showing that they are similarly situated to other drivers who were denied overtime wages by CTI. Plaintiffs' declarations establish their work duties, their overtime hours, and the denial of overtime wages. The declarations also sufficiently describe the similar conditions of other drivers employed by CTI. While CTI argues that Plaintiffs' assertions regarding other drivers are unfounded beliefs and speculation because they did not work the same hours as other drivers, CTI ignores Plaintiffs' assertions that they talked with fellow drivers about their experiences at CTI. Additionally, the report from the Department of Labor's investigation is strong evidence that the drivers at CTI were similarly situated and faced

the same policies and practices that denied them overtime wages. The Court also notes that CTI's argument about discrepancies between 374 or 364 miles driven per day compared to 500 miles is not relevant to the question of similarly situated employees being denied overtime wages. This minor, irrelevant discrepancy does not undermine the propriety of certifying a collective action.

Concerning the argument of the breadth of the proposed class, the Court agrees with Plaintiffs' position. The proposed release is limited in its scope of time, and there is no evidence before the Court that a release of claims was executed by potential plaintiffs who "cashed checks". The Court notes that there is a difference between waiving rights to file a lawsuit and waiving rights to join a lawsuit that is already pending. There is no evidence that CTI informed any potential class members that a collective action was already pending. Thus, the Court determines that narrowing the proposed class is not appropriate that this stage of the litigation.

## IV. CONCLUSION

For the foregoing reasons, the Court **GRANTS** Plaintiffs' Motion ([Filing No. 22](Filing No. 22)) and conditionally certifies the FLSA claim as a collective action for the following class:

> All current and former dump truck drivers who are or were employed by Defendant Central Tri-Axle, Inc. during the three-year period prior to the date of this Order.

The Court **ORDERS** CTI to produce the names, home addresses, and home telephone numbers ("Employee Information") of all current and former dump truck drivers who are or were employed by CTI during the three-year period prior to the date of this Order. CTI is ordered to provide the Employee Information in a usable electronic format to counsel for Plaintiffs within **fourteen (14) days** from the entry of this Order.

The Court authorizes that the proposed "Notice of Collective Action Lawsuit" and corresponding "Consent to Become Party Plaintiff" form submitted by Plaintiffs at [Filing No. 23-4](Filing No. 23-4) and [Filing No. 23-5](Filing No. 23-5) may be issued to those individuals whose names are provided by CTI as

required by this Order. The Notice shall be mailed within **seven (7) days** after CTI provides the Employee Information. The "Consent to Become Party Plaintiff" form shall be enclosed with the Notice, along with a self-addressed, postage paid return envelope. Plaintiffs are permitted to send subsequent mailings of this Notice. The Notice and Consent forms shall be mailed by first-class mail or overnight delivery.

The potential plaintiffs shall have **sixty (60) days** after the deadline for mailing of the Notice of Collective Action Lawsuit to return a Consent to Become Party Plaintiff form to opt-in to this litigation, unless the parties agree to permit late filings or good cause can be shown as to why the form was not returned prior to the deadline.

**SO ORDERED.**

Date: 11/13/2017

TANYA WALTON PRATT, JUDGE
United States District Court
Southern District of Indiana

DISTRIBUTION:

Philip J. Gibbons, Jr.
GIBBONS LEGAL GROUP, P.C.
phil@gibbonslegalgroup.com

Robert J. Hunt
LAW OFFICE OF ROBERT J. HUNT LLC
rob@indianawagelaw.com

Alaina Cathrine Hawley
SCOPELITIS GARVIN LIGHT HANSON & FEARY PC
ahawley@scopelitis.com

Alvin Jackson Finklea, III
SCOPELITIS GARVIN LIGHT HANSON & FEARY PC
jfinklea@scopelitis.com

Peter C. Morton
SCOPELITIS GARVIN LIGHT HANSON & FEARY PC
pmorton@scopelitis.com